UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                        PLAINTIFF


v.                                                  CRIMINAL NO. 3:22-CR-00094-DJH
                                                    *Electronically Filed*


SUZANNE CRAFT                                                    DEFENDANT

## UNITED STATES' REPLY IN SUPPORT OF NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER ACTS

In her response (Craft Response, DN 22 at Page ID #63), Craft agrees that the following evidence is admissible as *res gestae* or background evidence:

- White envelope with postmark "2 Nov 2020 PM 3 L", addressed to M.P.  Contents of envelope include a cutting from an advertisement for Owen Funeral Home and a white piece of paper with cutout letter that read, "GO NI**ERS"

- Undated white envelope with six stamps addressed to M.P.  Contents include another white envelope which contains an envelope from Fifth Third Bank and two live ammunition rounds wrapped in a purple latex glove and cardboard from a Barilla pasta box.

- Undated white envelope containing a white piece of paper with cutout letters that read, "YOU HAD ENOUGH NI**eR BITCH.?

- Undated white envelope containing a white piece of paper with cutout letters that read, "DIE STUpID BITCH MOVE OUT"

- November 30, 2020 Craft reported to LMPD that an unknown suspect(s) stole mail matter including a Fifth Third Bank statement, a VISA credit card statement, and a Girl Scouts of America letter, from her mailbox.

Craft's argument that the remaining items are unrelated and thus inadmissible as "not necessary to tell the story surrounding the five mailings," (DN 20 and Page ID #65), misses the mark.  To the contrary, the additional evidence the government seeks to admit is admissible as *res gestae* evidence that is intrinsic to and inextricably intertwined with the charged conduct and much of it

is necessary to prove the elements of the crimes charged or enhancement sought. *See, e.g. United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997) (limitations of Rule 404(b) do not apply to other acts evidence that is intrinsic to the crime charged); *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir.1993) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990)). Even if the proffered evidence is viewed through the lens of other acts evidence, it is admissible under Fed. R. Evid. 404(b) as the evidence is relevant and offered for a proper purpose.

The intrinsic and probative nature of much of the evidence the United States seeks to admit is demonstrated by a review the elements of the crime charged in this case – mailing threatening communications in violation of 18 U.S.C. § 876(c). While there are no specific Sixth Circuit Pattern Jury instructions for 18 U.S.C. § 876(c), there are analogous ones for 18 U.S.C. § 875(c). Both share the common element requiring the United States to prove that the communication contained a threat. The Sixth Circuit Pattern Jury instructions for § 875(c) state, in pertinent part, that

> (A)     The word "threat" means a statement that is a serious expression of intent to inflict bodily harm on a particular person [a particular group of individuals] that a reasonable observer would perceive to be an authentic threat. [To qualify as a threat, the statement need not be communicated to the targeted individual.]

Cases involving § 876 have similarly defined the term threat in the jury instructions. *See United States v. Arthur Marcus Boyd*, 2006 WL 6154959 (E.D.Tex.); *see also* Fifth Circuit Pattern Jury Instruction 2.40. This requirement recognizes that true threats are a historic and traditional exception to the bar against content-based restrictions on speech. *See United States v. Alvarez*, 132 S.Ct. 2537, 2544 (2012). They "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Factors courts have considered to determine whether a "true threat" was made include, but are not limited to, the

following: (1) the reaction of those who heard the threat, (2) whether the threat was conditional, (3) whether the threat was communicated directly to its victim, (4) the history of the relationship between the defendant and the victim, (5) whether the maker of the threat had made similar statements to the victim in the past, and (6) the context in which the threat was made. *United States v. Polson*, 154 F. Supp. 2d 1230, 1234 (S.D. Ohio 2001); *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996).  Importantly, in *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015), the Supreme Court held that, to have the appropriate *mens rea* to commit the offense, a defendant must be aware of the threatening nature of the communication.  To establish a violation, the government must prove that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *United States v. Jefferies*, 692 F.3d 473, 478 (6th Cir. 2012) (to establish a violation of section 875(c) the Government must show that the defendant made a knowing communication in interstate commerce that a reasonable observer would construe as a true threat to another); *United States v. Alkhabaz*, 104 F.3d1492, 1494-96 (6th Cir. 1997) (communication must be such that a reasonable person would take the statement as a serious expression of intention to inflict bodily harm and would perceive it as being communication to elicit some change or achieve some goal through intimidation).

Much of the proffered evidence is directly probative of whether the five mailed communications charged in this case are "true threats."  Evidence of events leading up to the crime is relevant to why the crime occurred and is thus intrinsic with the crimes charged – both as a general matter and specifically in this case to explain the nature of the threats and why a reasonable observer, and the victims themselves, perceived the threats as serious expressions of intention to inflict harm and intimidation.  *See United States v. Ford*, 613 F.3d 1263 (10th Cir. 2010); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995); *see also United States v. Hardy*, 228 F.3d

745, 748 (6th Cir. 2000) (defining *res gestae* as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.").

In addition, the enhancement under guideline 3A1.1 requires the United States to prove that Craft selected the victims because of their actual or perceived race, meaning that Craft's "motive is relevant." (DN 22 at Page ID #66). Certain of the evidence the United States seeks to admit serves to prove—directly or circumstantially—Craft's motive for selecting the victims in this case as the recipients of the charged threats. While, as Craft concedes in her response, the racially charged nature of the mailings does provide evidence from which the United States can argue that Craft selected the victims because of their race (DN 22 at Page ID #66), nothing in guideline 3A1.1 or the Federal Rules of Evidence provides that the United States is *limited* in its proof on this point to the mailings alone. *See* FRE 402; *see also Old Chief v. United States*, 519 U.S. 172, 179 (1997) (establishing that evidentiary relevance under Federal Rule of Evidence 401 is not "affected by the availability of alternative proofs of the element"). Other evidence, including defendant's prior and subsequent interactions with the victim family, demonstrates that Craft selected the victims as the object of her threatening mailings because of their race and the government is entitled to present that evidence at trial.

Finally, turning to Federal Rule of Evidence 404(b), it is important to note that it is a rule of inclusion rather than exclusion. The rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance for the purpose of proving that a person's actions conformed to her character. *See United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985) (Rule 404(b) is "actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified. The list of permissible uses

is not exclusive.").  None of the instances that the United States seeks to admit are offered for this prohibited purpose of demonstrating the defendant's character or conformity therewith.   The proffered evidence is admissible for proper purposes including, but not limited to, motive (which the defendant admits is at issue), plan, identity, and consciousness of guilt.

The United States addresses each of the remaining evidentiary matters[1] below in turn.

### The Proffered Evidence is Admissible

- **2019 and 2020 incidents involving Craft and her daughter using racial slurs against the victim family**

    o **An incident shortly after the victim family moved into their home in 2019 involving Craft's daughter using racial slurs against one of the victim children.**

    o **An incident in March 2020 when M.P. overheard her children say how Craft's daughter had again used racial slurs toward one of them.  After one of the children told Craft's daughter she was not welcome, the victim family heard Craft use a racial slur.  Later that day, through the house window, M.P. saw a white Lexus SUV pull up next to one of her children in the cul-de-sac and say something to the child.   The child told M.P. that Craft told the child that she was going to "run her over."**

 Evidence of events leading up to the crimes are relevant as to why the crime occurred are intrinsic with the crime charged. *See United States v. Ford,* 613 F.3d 1263 (10th Cir. 2010); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).  Both Craft and her daughter's use of racially charged language directed at the victims are part of the background of events and the history and characteristics between Craft, her daughter, and the victims that provides a coherent and comprehensible story explaining the later racially charged threats that Craft sent to the victim family.  In addition, these incidents are inextricably intertwined with the charged offenses since they go directly to the proof that the mailings contained true threats.  Craft, after using racial slurs

---

[1] The United States will not seek to introduce in its case in chief the previously referenced (1) February 17, 2021 surveillance footage; and (2) the empty plastic bags and one plastic bag containing kitty litter.

at the front door, directly threatened to harm one of the victim children, the same family she later

sent racially charged threats of harm. Specifically, Craft's threat to run over one of the family's

children is direct evidence that is relevant to victims' perception of the later mailings – some of

which threatened harm to the children – as being true threats.

This evidence is also admissible under 404(b) for the permissible purposes of proving

motive and identity.  Craft specifically used the same specific and unique racial slur in the mailed

threats against the victim family that was used by her daughter earlier in 2020.  This detail, along

with Craft's use of racial slurs against the family in the mailings in the same context (i.e. injuring

members of the victim family) share enough substantial characteristics such that it is relevant to

prove the identity of Craft as the individual who sent the mailings in this case.  These incidents

also provide context for the deterioration in Craft and the victim family's relationship that establish

Craft's motive to retaliate against them.

- **The June 2020 Driveway Paintings[2]**

  o **June 7, 2020, M.P. reported to LMPD that a suspect, who M.P. believed to be Craft, painted a racial slur on their driveway.**

This incident is near in time to the mailings, which happen a few months later, and is

intrinsic to the conduct charged.  This driveway painting is direct evidence explaining the context

and history of the relationship between Craft and the victims and serves, in particular, to establish

that the victims, like any reasonable person, would perceive the later mailings, including threats to

kill, as true threats.  Not only is the evidence inextricably linked with proving an element of the

---

[2] Should the Court admit evidence of driveway paintings on the victims' driveway, the United States would seek to introduce the fact that on June 7, 2020 Craft reported to LMPD that unknown suspect(s) painted racial slurs on her driveway in orange paint and that unknown suspect(s) also turned her water on and woke her up around 3:30 AM. This evidence would serve to provide a coherent, comprehensible, and complete story to the jury and not introducing this evidence would arguably be prejudicial to Craft.

charged conduct, it is also direct evidence in support of the 3A1.1 enhancement which requires the United States to prove that Craft targeted the victims because of their actual or perceived race.

Should the evidence be considered 404(b) evidence, it is permissible in that the incident is direct evidence of Craft's identity as the individual sending the subsequent mailings. The driveway paintings of racial slurs stating is also consistent with the later mailings which use similar racially charged language focused on the same goal – driving the victims from the neighborhood. The incident is thus also indicative of Craft's motive to threaten and terrorize her neighbors.

> o **June 16, 2020 C.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway and also damaged the lawn. C.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway.**

Similar to the June 7 driveway painting, the June 16, 2020 painting is direct evidence that goes to prove that the charged mailings were true threats and that Craft targeted the victims because of their race. *See* discussion *supra* regarding the June 7, 2020 driveway painting.

Again, should this evidence be considered 404(b) evidence, it goes directly to prove identity and motive. Like the June 7 driveway painting and the mailings, the June 16, 2020 driveway painting of a racial slur and swastika are racially charged targeted threats at the victims. Further proof of identity is the surveillance video from the victims of the June 16, 2020 incident showing a female similar in physical appearance to Craft approaching the victim's driveway from the direction of Craft's house carrying a bottle and then spraying the driveway.

> o **June 27, 2020 M.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway. M.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway, and then returning to Craft's house.**

Similar to the June 7 and the June 16, 2020, the June 27, 2020 driveway painting is direct evidence that goes to prove that the charged mailings were true threats and that Craft targeted the victims because of their race. *See* discussion *supra* regarding the June 7, 2020 driveway painting.

This is similarly permissible under Rule 404(b) to show identity and motive especially given that there is also surveillance video showing a female similar in appearance to Craft walking from Craft's residence, approaching the victims' driveway, painting a racial slur and a swastika on the driveway, and then walking back to the vicinity of Craft's residence.

- **Attempts to Interfere with Witnesses and Victims**

   o **July 15 and July 16, 2021 incidents on the highway involving Craft and victims.**

The United States will introduce evidence at trial that Craft engaged with members of the victim family on the highway on two occasions.  This includes video evidence of Craft tailing M.P. and one of the children on the expressway at a high rate of speed.  Craft's efforts to harass and intimidate the victims and witnesses in this case are relevant and admissible *res gestae* evidence. *See United States v. Poor Bear,* No. CR. 16-50149-02-JLV, 2019 WL 6312370, at *4 (D.S.D. Nov. 25, 2019) ("Obstruction of justice by "[w]itness tampering is 'factually interrelated' with the proceedings in which the defendant [allegedly] attempted to interfere.").  Alternatively, if considered under Rule 404(b), this evidence is admissible as evidence of identity as well as consciousness of guilt.  *See United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) ("though not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt.")

   o **Conduct by Craft to change or alter witness's memory of and statements regarding events and evidence relevant to the charged threats, including but not limited to communications between Craft and R.W. and a phone message Craft instructed another witness to leave for R.W.**

The victims received an undated white envelope addressed to M.P. that contained, among other things, two bullets wrapped in a purple latex glove.  At trial, the United States will introduce evidence to show that these bullets the victims received belonged to witness R.W.  R.W. is the father of Craft's daughter and previously resided with Craft in her home in Lake Forest.  On November 12 and November 13, 2020 – the same time period during which the victims were receiving the threatening mailings - Craft exchanged text messages with witness R.W. regarding the bullets.  In those text messages, Craft sends a picture of the bullet mailing she obtained from social media and insinuates that another individual may have sent the bullets.  Craft subsequently met with R.W. to discuss the bullets on two occasions, the latter of which was after Craft learned that R.W. had met with law enforcement.  At that meeting, Craft attempted to influence R.W.'s memory and statements relating to the bullets.  Additionally, on July 28, 2022, Craft instructed another witness, S.W., to call R.W. from Craft's cell phone in an additional attempt to influence R.W.'s recollection relating to the bullets sent to the victims.

Craft's attempts to influence witness testimony in this context are again admissible *res gestae* evidence.  *See Poor Bear,* No. CR. 16-50149-02-JLV, 2019 WL 6312370, at *4 (D.S.D. Nov. 25, 2019).  They are also admissible under Rule 404(b) as relevant evidence admitted for the proper purposes of Craft's knowledge, identity, lack of mistake, and consciousness of guilt.

- **Certified court records regarding Craft's state court charge and issuance of a no contact order in Jefferson District Court case 20-M-006022.**

After being arrested on state charges in July 2020, Craft was ordered not to have any contact with the victim neighbors.  She subsequently violated this order on multiple occasions, including by sending the threatening mailings in November and December 2020.  In particular, the December 2020 mailing appears to be sent while Craft was on home incarceration (HIP).  Evidence of the fact that Craft was under a no contact order and, at some times, on HIP, is intrinsic to the

charges and probative of Craft's motive and plan to escalate her threats from coming onto the victim's property to damage their property to using the mail to issue death threats from a distance. Especially with respect to the December mailing, evidence of her bond conditions and placement on home incarceration is also properly admissible under Rule 404(b) to prove identity as it further proves that Craft altered her methods of threatening the victim family (i.e. physical interactions to mailing) because of the fact that she was restricted in her movement.

- **Incidents with Craft Involving Neighbors Other than the Victim Family[3]**

  o **August 8, 2019 Craft reported to Louisville Metro Police Department ("LMPD") that an unknown suspect(s) egged the back of her SUV, causing damage and that an unknown suspect(s) left fecal matter on her front door threshold, keylock, and doorknob.**

  o **August 9, 2019 Craft reported that that an unknown suspect(s) caused damage to her vehicle and home. Craft advised of the ongoing feud with a neighbor across the street.**

The circumstances of Craft's reports to police of her interactions with other neighbors prior to the charged mailings are inextricably intertwined with the charged crimes and provide evidence of motive and targeting of the victim family because of their perceived race. These instances show that Craft reported issues with her other neighbors to the police, including her interactions with the victim family. Yet she only sent one family – a family with biracial children – racially charged threats. Evidence of her interactions with other neighbors and the lack of mailed threats sent to them is circumstantial evidence of her motive and that she targeted the victim family because of their perceived race and support the 3A1.1 enhancement.

---

[3] The United States intends to introduce testimony from Craft's neighbors as it relates to the events addressed throughout this brief and on other relevant evidence, but does not intend to present testimony relating to separate, as of yet unidentified, other acts.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

_____

Stephanie M. Zimdahl
Christopher C. Tieke
Assistant U.S. Attorneys
717 West Broadway
Louisville, Kentucky 40202
PH: (502) 582-5911
FAX: (502) 582-5097
Email: Christopher.tieke@usdoj.gov
            Stephanie.zimdahl@usdoj.gov

## **<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on January 30, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

_____

Stephanie M. Zimdahl
Christopher C. Tieke
Assistant United States Attorneys

11