UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                  CRIMINAL NO. 3:22-CR-00094-DJH
                                                           *Electronically Filed*

SUZANNE CRAFT                                                        DEFENDANT

**UNITED STATES' PRETRIAL MEMORANDUM**
*– Filed Electronically –*

The United States files this Pretrial Memorandum of the trial currently scheduled for March 6, 2023, in Louisville, Kentucky.

**A.      STATUTES INVOLVED AND ELEMENTS OF OFFENSES**

**Counts 1 -5**

**18 U.S.C. § 876(c) – Mailing Threatening Communications**

(1) First, that the Defendant knowingly mailed or caused to be mailed by the United States Postal Service a communication.

(2) Second, that the communication contained a threat to injure a particular person or particular group of individuals; and

(3) Third, that the Defendant mailed the communication for the purpose of making a threat.

**B.      STATEMENT OF UNDISPUTED AND DISPUTED FACTS**

In the spring of 2019, the Victim Family moved into house number 510 on a cul-de-sac in the Lake Forest neighborhood. Suzanne Craft (Craft) lived at 507 and was their neighbor on the cul-de-sac, with their houses separated from one another by one house in between. At the time

they moved in, victims M.P.[1] and C.P. had four children, later growing their family to five children. The children are biracial with differing racial backgrounds, including Black. Two of the children have darker complected skin as compared to the other three. Initially, the Victim Family and Craft got along and were friendly with one another. This all abruptly changed.

**Craft's harassment begins**

Sometime around May 2019, M.P. sent Victim Child 1 outside to check on some of her siblings who were outside. Victim Child 1 is half Black and has a dark complexion – the darkest complexion of the Pineda children. Craft's daughter, S.W., commented to Victim Child 1's siblings that Victim Child 1 was a "n-word"[2]. Victim Child 2 did not know what the word meant and asked her siblings at the dinner table. M.P. addressed this with the family and told the family to stay away from Craft and her daughter.

In the Spring of 2020, Victim Child 1 and Victim Child 2 were out in the cul-de-sac riding bikes. As they were doing so, S.W. was calling out the word "n-let"[3] and "n-word." Victim Child 1 told S.W. to leave them alone. Victim Child 1 and 2 then went inside. A short time later, Craft came to the front door and banged on it, yelling down to her daughter at the end of the Victim Family's driveway, "what the f*** did that n-word say to you." Terrified, M.P., who was pregnant at the time, and Victim Child 1, who were both near the front door, got down on the floor and crawled to the back of the house to avoid being seen through a window near the front door. Later that same day, Victim Child 2 was playing outside and being watched by Victim Child 1. Craft's

---

[1] For the privacy of the victims, their names are being omitted. *See* 18 U.S.C. § 3771.
[2] Due to the racially charged nature of the language at issue in this case, the United States has not directly quoted the language but has instead used commonly known euphemisms. Where appropriate, the United States has provided photographs of certain evidence as exhibits that contain the actual language used. The victims' name and address have been redacted from the filed exhibits, *see* 18 U.S.C. § 3771; however, the unredacted documents have been previously provided to the defendant and can be provided to the Court at the pretrial hearing in this case.
[3] "N-let" is a unique and specific variation of the n-word that is also seen in the mailings in this case. *See* Exhibits E, F, G, and H.

vehicle came down the cul-de-sac toward them. Craft approached Victim Child 2, rolled down her window, and told Victim Child 2 that if she rode her bike again on that side of the road, Craft would run her over.

**Driveway paintings**

On June 7, 2020, the Victim Family found a racial slur painted on their driveway.[4] The racial slur said, "Go away n-word." A photograph of the June 7, 2020, driveway painting is attached as Exhibit A.

On June 16, 2020, the Victim Family found a racial slur saying, "No N-word" and a swastika painted on their driveway. A photograph of the June 16, 2020, driveway painting is attached as Exhibit B. Footage from June 16, 2020, captured on this camera shows a woman similar in appearance to Craft approaching their driveway from the direction of her house and then bending down to spray paint the Victim Family's driveway.



---

[4] Craft also filed a report with LMPD regarding a racial slur, in the same paint color, painted on her driveway. The painting on Craft's driveway read "No N-word Only Whites." Craft reported that unknown suspects also turned her water on outside and woke her up around 3:30 AM. Craft showed officers a can of orange paint in the bushes on her property.

Again, on June 27, 2020, the Victim Family found "Go N-word" and a swastika painted on their driveway. A photograph of the June 27, 2020, driveway painting is attached as <u>Exhibit C.</u>

The Victim Family again provided surveillance video showing a woman similar in appearance to Craft walking from her house to the Victim Family's driveway, spray painting the driveway, and then walking back to her house.



In July 2022, Craft was charged in Jefferson County District Court case 20-M-006022 with criminal mischief and harassing communications due to incidents involving the paintings on the Victim Family's driveway.[5] A no contact order was issued. This did not stop Craft from harassing the Victim Family and, instead, she escalated to threatening acts of violence against them.

Between October and December 2020, Craft sent the Victim Family multiple pieces of mail matter containing racial slurs and threats of violence (these mailings are the subject of the five charged counts) and other communications containing similar threats.

---

[5] As of the date of this filing, this case remains pending.

**November 2, 2020 (Count 1)**

A white envelope with post mark 2 NOV 2020 PM 3 L, addressed to M.P.[6] with a slight variation with respect to M.P.'s first name. (see below). The contents of the envelope include another envelope with both the address and the return address scratched out. Cutout letters found on the inside of the inner envelope read, n-word LeAVE We hatE Your kind Last Chance. Photographs of this November 2 mailing are attached collectively as Exhibit D.

The FBI Lab performed special photographic techniques to analyze the obliterated portions of the writing contained in the November 2 mailing. The techniques revealed that the envelope the threat was on was a piece of mail matter previously sent by the Girl Scouts of America to S.W., Craft's daughter, at Craft's house number 507. *See* Exhibit D.

**November 5, 2020 (Count 2)**

A white envelope with postmark 5 NOV 2020 PM 1 L, addressed to M.P. with a slight variation with respect to M.P.'s first name (see below) and a return address name of "N-LET DESTROYER". The contents of the envelope include a brown envelope with cutout letters that read, "MOVE OUT OR BULLETS!" A photograph of this November 5 mailing is attached as Exhibit E.

**November 6, 2020 (Count 3)**

A white envelope with postmark 6 NOV 2020 PM 1 L, addressed to M.P. with a slight variation with respect to M.P.'s first name (see below) and a return address name of "N-LET DESTROYER". The contents of the envelope include another envelope containing a piece of

---

[6] For the privacy of the victims in this case, the victim's name and address have been omitted from the description of the mailing and has been redacted in the exhibits containing photographs of the mailings. *See* 18 U.S.C. § 3771. The United States has provided the defendant with the victim's real name and unredacted copies of the letters and will provide the same to the court.

cardboard from a Barilla pasta box, with cutout letters that read, "tWO DEaD n-LeTS." Photographs of this November 6 mailing are attached as <u>Exhibit F</u>.

**November 6, 2020 (Count 4)**

A white envelope with postmark 6 NOV 2020 PM 2 L, addressed to M.P. with a slight variation with respect to M.P.'s first name (see below) and a return address name of "N-LET DESTROYER". The contents of the envelope include a portion of another envelope with cutout letters that read, "YOU will DiE B***h!" Photographs of this November 6 mailing are attached as <u>Exhibit G</u>.

The FBI forensic lab analyzed this November 6 mailing for fingerprints. The interior envelope containing the cutout letters and the threat was a positive match for two fingerprints belonging to Craft.

**December 2020 (Count 5)**

A white envelope addressed to M.P. with a slight variation with respect to M.P.'s first name (see below) and a return address name of "N-LET DESTROYER. The outer envelope contained another sealed envelope. The inner envelope contained cutout letters attached to the part of the used envelope displayed to read what appears to be "Die Die Stupid N-word Die." Photographs of this December 2020 mailing are attached as <u>Exhibit H</u>.

Notably, all mailings were addressed using the variation of the victim's first name and is the same variation of victim M.P.'s name that Craft has stored in her phone as the name for the saved contact for M.P. Some of the mailings also contained the return address of "n-let destroyer" and one specific mailing also used the same derogatory language. The word n-let is the same, unique, specific, racial slur that Craft's daughter used to refer to the Victim Family children in the Spring 2020 incident.

**Additional mailings and the bullet letter**

In addition to the charged mailings, Craft also sent the Victim Family other racially charged and threatening communications. The additional communications are similar in composition, structure, and racially motivated threatening content as the charged mailings:

- a white envelope with postmark "2 Nov 2020 PM 3 L", addressed to M.P. Contents of envelope include a cutting from an advertisement for Owen Funeral Home and a white piece of paper with cutout letter that read, "GO N-WORD"

- an undated white envelope containing a white piece of paper with cutout letters that read, "YOU HAD ENOUGH N-WORD B***H."

- an undated white envelope containing a white piece of paper with cutout letters that read, "DIE STUpID B***H MOVE OUT"

Photographs of this mail matter are attached as Exhibit I-1, I-2, and I-3.

Of particular note is another envelope the Victim Family received in November 2020 containing two rounds of ammunition. It was a white envelope with six stamps, addressed to M.P. The contents of the envelope included another white envelope which contained an envelope from Fifth Third Bank and two live ammunition rounds wrapped in a purple latex glove and cardboard from a Barilla pasta box. Photographs of this mail matter are attached as Exhibit J. The Victim Family posted a photo of the bullet letter on social media on November 11, 2020. The next day, Craft contacted R.W.– her former boyfriend and father of her child- via text message. In that series of text messages, Craft says, "they say I put bullets in their mailbox" and, before R.W. identifies those bullets as his, asks R.W. how his bullets got mailed. R.W. had previously resided with Craft at 507 until 2017 (before the Victim Family moved into 510). R.W. has never met the Victim Family. R.W. had kept three bullets as souvenirs from his time in the military. While living with

7

Craft he placed the bullets in a box. When he moved out of Craft's house in 2017, he recalls simply moving the box with his military items, without checking inside the box, to his new residence. When Craft texted R.W. in 2020, R.W. recognized those bullets as his and located the box with his military items in his new residence and realized that it contained only one bullet, and that his other two bullets were missing. R.W. subsequently confronted Craft.

**Craft claims mail is stolen**

On November 30, 2020, after the Victim Family received some of the threatening mailings, Craft reported to LMPD that she believed someone stole her mail on November 21, 2020, from her mailbox including a Fifth Third Bank statement, a Visa credit card statement, and a Girl Scouts of America letter. Notably, these are some of the contents of the threatening mail matter she sent to the Victim Family. *See* Exhibit D and Exhibit J. The United States Postal Inspection Service confirmed that Craft was not signed up for Informed Delivery- a free service from United States Postal Service that shows customers images of incoming mail, as well as status updates about incoming and outbound packages-during November of 2020. Moreover, this was also long before the FBI lab revealed the obliterated portion of the November 2 mailing (Count 1) showing that the envelope the threat was on was a piece of mail matter previously sent by the Girl Scouts of America to S.W at Craft's residence.

**Craft chases members of the Victim Family on the highway**

On July 16, 2021, M.P. and Victim Child 1 were driving on the highway and encountered Craft driving in her vehicle. Craft engaged in erratic driving to maneuver behind M.P. in an effort to tail her. M.P. sped up to try and escape Craft who continued to closely follow behind. The United States will seek to introduce testimony and video evidence of this incident at trial.

**Craft attempts to obstruct the federal investigation**

In June 2022, R.W. informed Craft that he had previously met with the FBI and told them that the two bullets the Victim Family received were in fact his bullets. Craft became upset and attempted to influence R.W. to recant on his statement to the FBI.

On July 28, 2022, at approximately 12:48 p.m., counsel for the United States sent counsel for Craft a letter indicating that Craft was the target of a federal investigation into potential federal criminal violations involving the mailing of threatening communications and the interference of the right to fair housing. That same day, and no later than 8 p.m., the contents of the letter were communicated to Craft. At approximately 9:30 p.m. on that same day, R.W. received a voicemail from S.W. calling from Craft's cell phone. In that voicemail, S.W. discusses the bullets, their whereabouts, and attempts to influence R.W.'s recollection relating to the bullets sent to the Victim Family. Craft directed S.W. to make this call. R.W. believes that Craft was influencing S.W. to make this call in an attempt to influence him.

It is presumed by the United States that the defendant disputes all facts except those stipulated to.

**C.** **A SEPARATE STATEMENT OF EACH UNRESOLVED SUBSTANTIVE ISSUE OF LAW, WITH DISCUSSION AND CITATIONS TO AUTHORITIES**

The United States is considering filing motions in limine addressing any foreseeable substantive issues of law. The deadline for filing such motions has not lapsed.

**D.** **A STATEMENT OF EVIDENTIARY ISSUES WHICH IT IS REASONABLY BELIEVED WILL BE RAISED AT TRIAL TOGETHER WITH CITATIONS TO THE FRE AND AUTHORITES IN SUPPORT OF POSITION TAKEN.**

1. Stipulations

The United States and the defendant have agreed to stipulations under Rule 902 regarding (1) the authenticity of the iPhone 8+ S/N F17WG09KJCLM forensic image and report and any

derivative exhibits therefrom; and (2) that on July 28, 2022, at approximately 12:48 p.m., counsel for the United States sent counsel for Suzanne Craft a letter indicating that Suzanne Craft was the target of a federal investigation into potential federal criminal violations involving the mailing of threatening communications and the interference of the right to fair housing. That same day, and no later than 8 p.m., the contents of the letter were communicated to Ms. Craft.

The parties are continuing to discuss additional stipulations, including stipulations regarding images of the June 7, June 16, and June 27, 2020, driveway paintings.

2. Evidence of Other Acts

The United States filed a Notice of Intent to Use Evidence (DN 21). Craft filed a response. (DN 22). The United States filed its Reply. (DN 23). Craft's sur-reply was filed on February 6, 2023. (DN 26).

E. **A STATEMENT OF KNOWN OR REASONALY ANTICPATED POTENTIAL TRIAL PROBLEMS OR OTHER ISSUES WHICH MAY ASSIST THE COURT IN TRYING THE CASE.**

This case involves racially offensive language. The parties are collaborating regarding the use and treatment of such language during the course of the trial.

There will be children witnesses. The parties are collaborating regarding any special accommodations needed.

F. **PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS WITH CITATIONS TO AUTHORITIES.**

The United States has tendered proposed jury instructions by separate filing.

G. **PROPOSED VOIR DIRE QUESTIONS**

1. Is any member of the panel acquainted, either professionally or socially, with:
    a. The defendant?
    b. The defense attorney?
    c. The case agent?
    d. The Assistant United States Attorneys?

2. This is a criminal case. Do any of you have any moral, religious or philosophical beliefs that would prohibit you from being a fair and impartial juror in this case? In other words, does anyone have a problem with sitting in judgment of another person?

3. This case was investigated by the Federal Bureau of Investigation, United States Postal Inspection Service, and the Louisville Metro Police. Has any member of the panel or any member of your family or your close friend/associate had any negative contact with any law enforcement agency? Does anyone hold any negative views of law enforcement officers in general? Would these experiences or opinions affect your ability to be fair and impartial to the government in this case?

4. There will be local law enforcement and federal agents testifying in this case. Has anyone had a really good or bad experience with the United States Attorney's office, a police officer, or federal agent-even something like getting a traffic ticket you did not think you deserved- that you think would affect your ability to listen to his or her testimony and give it the same weight as any other witness?

5. Has anyone served in law enforcement in his or her community or elsewhere? Family members?

6. You will likely hear testimony from several witnesses who are government employees. Can you fairly evaluate the credibility of government witnesses by considering all available evidence in determining if those witnesses are truthful in their testimony?

7. Has any member of the panel or any member of your immediate family or close friend/associate had an unpleasant experience in court or involving lawyers which would cause you to be biased against either of the parties?

8. Have any of you ever been the victim of crime, or do you have a friend or family member who has been the victim crime?

9. The defendant in this case has been charged with selecting the victims of the crimes charged in this case because of the victims' actual or perceived race or color. Is there anything about the nature of this charge that would cause you difficulty in serving as a fair and impartial juror?

9. Have you or anyone close to you ever been accused of racial or ethnic discrimination?

10. Have any of you faced racial or ethnic discrimination? What was that based on? How did it make you feel? Do you think this experience will affect your ability to impartially consider the evidence in this case?

11. Have you or anybody you know been the target of racial violence or attempted racial violence?

12. Does anyone believe that laws that establish penalties for criminal acts that are motivated by hatred or prejudice against individuals on the basis of race, color, or ethnicity should not exist?

13. Does anyone believe it is a waste of federal government resources to investigate and prosecute crimes motivated by a victim's race or color?

14. Do you have any feelings toward any racial or ethnic group which would cause you to judge a member of the group differently than you would judge a member of your own racial or ethnic group?

15. Do you believe that discrimination against African Americans or other racial or ethnic groups exists today in Kentucky?

16. Do you find the use of slang terms or racial slurs to describe race or ethnicity acceptable?

17. Do you believe that individuals of certain racial or ethnic groups are superior to individuals of other racial or ethnic groups?

18. At the end of the case the Court will instruct you on the elements of each offense. Those are the facts that the government must prove to you beyond a reasonable doubt. That is their burden. Will any of you hold the government to a different burden based on your expectations or require the government to prove to you something that is not in the instructions. In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else that you may be wondering about?

19. Do all of you understand that you must set aside any personal feelings you may have about what the law ought to be if they conflict with the law contained in the Court's instructions? Is there anyone who thinks that they will not be able to follow the law that the Court gives you in the instructions?

20. Are any of you employed by a law enforcement agency, or do you have friends or family members employed by law enforcement agencies?

21. Have you or a close friend or family member ever been arrested or charged with a crime?

22. Have you or a close friend or family member ever testified for a defendant in a criminal trial?

23. Have you or a close friend or family member ever served time in a jail or prison?

24. Have any of you ever served on a jury before?

25. If you have served on a jury before, was it a civil or criminal case?

26. If you have served on a criminal jury before, did you deliberate and reach a verdict in the case?

27. If you did deliberate and reach a verdict, what was the verdict in the case?

28. If you served on either a criminal or civil jury before, did you serve as the foreperson?

29. If you served on either a criminal or civil jury before, is there anything about that experience that would prevent you from listening to the evidence in this case and bringing back a verdict based only on the evidence?

30. Do you understand that in federal court, the punishment a defendant receives, if any, is to be imposed by the Court and your verdict must in no way be affected by your concern for what punishment would be proper?

31. Do you understand that the duty of the Government is to prove guilt to the exclusion of a reasonable doubt, but the government is not required to prove guilt beyond all possible doubt?

32. Do you understand that a defendant on trial is entitled to a presumption of innocence however, as with all presumptions, it may be overcome by competent evidence?

33. Do you understand the law makes no difference between direct and circumstantial evidence and the weight to be given to it; that the burden is one of proof beyond reasonable doubt. Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you conclude that it was raining.

34. Are there any of you who, because of religious, philosophical, or any other reason, do not feel you could sit in judgment of these facts and vote to return a verdict of guilty regardless of the proof in this case?

35. Are there any of you who have difficulty hearing, seeing, or sitting for long periods of time?

36. Are there any of you that have events in your life presently that would distract you or divert your attention from the testimony and evidence of this case?

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

Stephanie M. Zimdahl
Christopher C. Tieke
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5911
(502) 582-5912 (Fax)
Christopher.tieke@usdoj.gov
Stephanie.zimdahl@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

Assistant United States Attorney