UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                    Plaintiff,

v.                                                    Criminal Action No. 3:22-cr-94-DJH

SUZANNE CRAFT,                                                               Defendant.

* * * * *

## MEMORANDUM AND ORDER

Defendant Suzanne Craft is charged with five counts of mailing threatening communications in violation of 18 U.S.C. § 876(c).  (Docket No. 1)  The United States has filed a notice of intent to introduce nineteen categories of evidence of uncharged and additional conduct as background evidence, or, in the alternative, under Federal Rule of Evidence 404(b).  (D.N. 21)  Craft filed a response and sur-reply arguing that fourteen of the categories are inadmissible and should be excluded.  (D.N. 22; D.N. 26)  The government subsequently gave notice that it will no longer seek admission of two other categories.  (D.N. 23, PageID.74 n.1)

In a previous order (D.N. 33), the Court overruled objections to the evidence categories numbered (13), (14), (15), (16), and (18) and found them to be admissible background evidence. It denied as moot the objections to the evidence categories numbered (5) and (17).  (*Id.*)  The Court also reserved its ruling on the evidence categories numbered (1), (6), (7), and (8) and will wait to hear further argument prior to any attempted introduction at trial.  (*Id.*)  The Court will now address the defendant's objections to the evidence categories numbered (2), (3), (4), (9), (10), (11), (12), and (19).

1

## I.

The remaining categories of evidence that the government intends to introduce are:

2. August 8, 2019[,] Craft reported to Louisville Metro Police Department ("LMPD") that an unknown suspect(s) egged the back of her SUV, causing damage and that an unknown suspect(s) left fecal matter on her front door threshold, keylock, and doorknob.

3. August 9, 2019[,] Craft reported that that [sic] an unknown suspect(s) caused damage to her vehicle and home.  Craft advised of the ongoing feud with a neighbor across the street.

4. An incident in March 2020 when M.P. overheard her children say how Craft's daughter had again used racial slurs toward one of them.  After one of the children told Craft's daughter she was not welcome, the victim family heard Craft use a racial slur.  Later that day, through the house window, M.P. saw a white Lexus SUV pull up next to one of her children in the cul-de-sac and say something to the child.  The child told M.P. that Craft told the child that she was going to "run her over."

9. June 7, 2020, M.P. reported to LMPD that a suspect, who M.P. believed to be Craft, painted a racial slur on their driveway.

10. June 16, 2020[,] C.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway and also damaged the lawn.  C.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway.

11. June 27, 2020[,] M.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway.  M.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway, and then returning to Craft's house.

12. Certified court records regarding Craft's state court charge and issuance of a no contact order in Jefferson District Court case 20-M-006022.

19. Conduct by Craft to change or alter witness's memory of and statements regarding events and evidence relevant to the charged threats, including but not limited to communications between Craft and R.W. and a phone message Craft instructed her daughter to leave for R.W.

(D.N. 21, PageID.58–60)

2

According to the United States, the proffered evidence is "relevant admissible evidence pursuant to Rule[s] 401 and 402 that is admissible to prove the elements of the charged crimes" and "is also *Res Gestae* and/or evidence that is inextricably intertwined with the charged conduct." (*Id.*, PageID.57 (citations omitted)) In the alternative, the United States contends that the evidence is admissible under Rule 404(b). (*See id.*, PageID.58 (citations omitted)) In her response and sur-reply, Craft argues that the remaining evidence categories may not be properly admitted as background evidence and argues that they must be analyzed under Rule 404(b). (*See* D.N. 22, PageID.64–67; D.N. 26) The Court will first review the charges against Craft and then analyze the eight contested categories of evidence under the applicable standard.

## II.

A review of the charges against Craft is important for determining the intrinsic and probative nature of the evidence the government seeks to introduce. Craft is charged with five counts of mailing threatening communications in violation of 18 U.S.C. § 876(c). (D.N. 1) Section 876(c) states that

> [w]hoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

§ 876(c). To act knowingly "with respect to conduct or to a circumstance described by a statute defining an offense[,] a person must be aware that his conduct is of such nature or that such circumstance exists." *United States v. Johnson*, 116 F.3d 163, 166 n.3 (6th Cir. 1997) (quoting 22 C.J.S. *Criminal Law* § 36)). Furthermore, "[a] person acts knowingly with respect to a result when he is aware that his conduct is practically certain to cause the result. An act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other

3

innocent reason." *Id.* (quoting 22 C.J.S. *Criminal Law* § 36)).  In the context of § 876(c), a threat has been defined as "a serious statement expressing an intention to injure any person which under the circumstances would cause apprehension in a reasonable person as distinguished from idle or careless talk, exaggeration or something said in a joking manner." *U.S. v. Williams*, 641 F.3d 758, 768 (6th Cir. 2011).  From this outline of the essential elements of the charges, the Court will evaluate whether the proffered evidence is admissible under the applicable standard.

## A.     Background Evidence

The Court will first consider whether any of the proffered evidence is admissible as background evidence.  Generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But Rule 404(b)(2) lists several exceptions that allow evidence of uncharged conduct to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Background evidence, in contrast, refers to evidence of uncharged acts "that [is] inextricably intertwined with the charged offense" and thus is not character evidence and need not fall under one of the exceptions in Rule 404(b) to be admissible. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).  "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (quoting *Hardy*, 228 F.3d at 748).  To be admissible, background evidence must be related to the charged offense by temporal proximity, causation, or "spatial connections."  *Id.* (quoting *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012)).  The United States seeks to introduce

four categories of evidence as background evidence: (1) Craft's previous interactions with the

victim family; (2) Craft's efforts to interfere with witness testimony; (3) Craft's related state-

court proceedings, including a no-contact order; and (4) Craft's previous interactions with other

neighbors.  (*See* D.N. 23)

### 1. Interactions with the Victim Family

The United States first argues that the following evidence is admissible as background

evidence:

> a. An incident in March 2020[,] when M.P. overheard her children say how Craft's daughter had again used racial slurs toward one of them.  After one of the children told Craft's daughter she was not welcome, the victim family heard Craft use a racial slur.  Later that day, through the house window, M.P. saw a white Lexus SUV pull up next to one of her children in the cul-de-sac and say something to the child.  The child told M.P. that Craft told the child that she was going to "run her over."
>
> b. June 7, 2020, M.P. reported to LMPD that a suspect, who M.P. believed to be Craft, painted a racial slur on their driveway.
>
> c. June 16, 2020, C.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway and also damaged the lawn.  C.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway.
>
> d. June 27, 2020, M.P. reported to LMPD that a person believed to be Craft spray painted racial slurs and a swastika on their driveway. M.P. provided surveillance video showing a female carrying a bottle from the driveway to her left, possibly Craft's house and spray painted the driveway, and then returning to Craft's house.

(D.N. 23, PageID.74–77)

With regard to the March 2020 incident directly involving Craft, the government argues

that "[e]vidence of events leading up to the crimes are relevant as to why the crime occurred

[and] are intrinsic with the crime[s] charged."  (*Id.*, PageID.74 (citing *United States v. Ford*, 613

F.3d 1263 (10th Cir. 2010); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995)))  The

government further contends that the driveway-painting incidents in June 2020, which occurred

close in time to the mailings, "are intrinsic to the conduct charged" because they "are direct evidence that goes to prove that the charged mailings were true threats, and that Craft targeted the victims because of their race." (*Id.*, PageID.75–77)  The Court agrees.  Under the present facts, the background evidence proposed by the government provides significant context for the jury's consideration.  The victim family's previous interactions with Craft occurred close in time to the charged offenses and this evidence may "help de-code" and provide context for the alleged threatening communications.  *United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020) (finding that testimony regarding previous experiences and interactions with the defendant "constitute[] both proper *res gestae* evidence, as well as evidence that is 'inextricably intertwined'").  This evidence is a prelude to the charged offenses, will likely form an integral part of a witness's testimony, and completes the story of the charged offenses because it shows that the victim family and Craft had personal interactions in the past that also included threats or threatening behavior.  Without this evidence, the alleged threatening communications may confusingly appear as isolated incidents.  The Court therefore finds that this evidence is admissible as background evidence.  *See Adams*, 722 F.3d at 810.

### 2.  Interference with Witness Testimony

The United States next seeks to introduce evidence of Craft's interactions with a witness in this case as background evidence.  (D.N. 23, PageID.77–78)  The proffered evidence is "[c]onduct by Craft to change or alter witness's memory of and statements regarding events and evidence relevant to the charged threats, including but not limited to communications between Craft and R.W. and a phone message Craft instructed her daughter to leave for R.W." (*Id.*, PageID.77)  The government contends that "Craft's attempts to influence witness testimony" are

"admissible *res gestae* evidence."  (*Id.*, PageID.78 (citing *United States v. Poor Bear*, No. CR. 16-50149-02-JLV, 2019 WL 6312370, at *4 (D.S.D. Nov. 25, 2019)))

In November 2020, the victim family received "an undated white envelope addressed to M.P. that contained, among other things, two bullets wrapped in a purple latex glove."  (*Id.*; *see* D.N. 27-10)  The government intends to introduce evidence that the "bullets the victims received belong to witness R.W." who "is the father of Craft's daughter" and a former resident of Craft's home in the Lake Forest subdivision.  (D.N. 23, PageID.78)  According to the United States,

> [o]n November 12 and November 13, 2020 – the same time period during which the victims were receiving the threatening mailings - Craft exchanged text messages with witness R.W. regarding the bullets.  In those text messages, Craft sends a picture of the bullet mailing she obtained from social media and insinuates that another individual may have sent the bullets.  Craft subsequently met with R.W. to discuss the bullets on two occasions, the latter of which was after Craft learned that R.W. had met with law enforcement.  At that meeting, Craft attempted to influence R.W.'s memory and statements relating to the bullets.  Additionally, on July 28, 2022, Craft instructed another witness, S.W., to call R.W. from Craft's cell phone in an additional attempt to influence R.W.'s recollection relating to the bullets sent to the victims.

(*Id.*)  The bullets are an integral part of the government's argument that Craft violated § 876(c). The proposed evidence of Craft's communications with R.W. is probative of the charged offenses because (1) it directly relates to the bullets that were mailed to the victim family; (2) helps explain who had knowledge and or possession of the bullets in and around the time they were mailed to the victim family; (3) potentially pinpoints the location of the bullets in and around the time they were mailed to the victim family; and (4) alleges that on multiple occasions Craft attempted to influence the memory and statements of R.W. relating to the bullets.  Craft's alleged attempts to influence R.W. occurred within days of the charged offenses and therefore are related by temporal proximity.  Such evidence will likely "form[] an integral part of a

witness's testimony." *Adams*, 722 F.3d at 810.  Accordingly, the Court finds that this evidence is admissible as background evidence.  *See id.*

### 3.  Craft's State-Court Proceedings

The United States additionally seeks to introduce evidence of "[c]ertified court records regarding Craft's state court charge and issuance of a no-contact order [with the victim family] in Jefferson District Court case 20-M-006022."  (D.N. 23, PageID.78)  The government contends that this evidence shows that Craft violated the no-contact order by "sending the threatening mailings in November and December 2020" for which she is charged in this case.  (*Id.*)  The government further contends that the evidence is "intrinsic to and probative of Craft's motive and plan to escalate her threats from coming onto the victim[s'] property to damage their property to using the mail to issue threats."  (*Id.*, PageID.78–79)  The Court is skeptical, however, that the proposed evidence constitutes background evidence because, under § 876(c), Craft's motive and plan are not at issue and such evidence does not appear necessary to "complete[] the story of the charged offense[s]" or for any other purpose identified by the Sixth Circuit.  *Adams*, 722 F.3d at 810 (citation omitted).  Furthermore, the government does not cite any case law, nor is the Court aware of any, that supports its argument.  (*See* D.N. 23, PageID.78–79)  Accordingly, the Court finds that this evidence is not admissible as background evidence.  *See Adams*, 722 F.3d at 810.

In the alternative, the government asserts that this evidence is also admissible "to prove identity."  (D.N. 23, PageID.79)  The Court will therefore evaluate whether the evidence of Craft's state-court proceedings is admissible under Rule 404(b) below.

### 4.  Interactions with Other Neighbors

Finally, the United States wishes to offer evidence of Craft's past interactions with other neighbors as background evidence.  (*Id.*)  The evidence includes the following: (1) on "August 8, 2019[,] Craft reported to Louisville Metro Police Department ('LMPD') that an unknown suspect(s) egged the back of her SUV, causing damage and that an unknown suspect(s) left fecal matter on her front door threshold, keylock, and doorknob" and (2) on "August 9, 2019[,] Craft reported that that [sic] an unknown suspect(s) caused damage to her vehicle and home.  Craft advised of the ongoing feud with a neighbor across the street."  (*Id.*)

The government contends that "[t]he circumstances of Craft's reports to police of her interactions with other neighbors prior to the charged mailings [in this case] are inextricably intertwined with the charged crimes and provide evidence of [Craft's] motive and [intentional] targeting of the victim family because of their perceived race."  (*Id.*)  Specifically, the government wishes to show that Craft turned to the police to deal with negative interactions with her white neighbors in the past but escalated to threats of violence when the negative interactions were with neighbors of color.  (*Id.*)  The Court is skeptical, however, that the proposed evidence regarding Craft's prior and subsequent interactions with other neighbors could constitute background evidence.  Such evidence does not appear necessary to "complete[] the story of the charged offense[s]" or for any other purpose identified by the Sixth Circuit.  *Adams*, 722 F.3d at 810 (citation omitted).  This evidence relates to two separate instances, years prior, that did not involve the alleged victims in this case.  Accordingly, the Court finds that this evidence is not admissible as background evidence.  *See id.*

Because the government asserts that this evidence is also admissible to prove Craft's motive of racial animus (*see* D.N. 23, PageID.79), however, the Court will evaluate whether the evidence of Craft's interactions with other neighbors is admissible under Rule 404(b).

**B.     Federal Rule of Evidence 404(b)**

Rule 404(b)(2) allows evidence of uncharged conduct to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  The United States contends that the evidence of (1) Craft's state-court proceedings and the issuance of a no-contact order, and (2) her interactions with other neighbors, are admissible to prove her identity and her motive of racial animus, respectively. (D.N. 23, PageID.79)   The government argues that the evidence of Craft's state-court proceedings and the issuance of a no-contact order "prove identity as it further proves that Craft altered her methods of threatening the victim family (i.e.[,] physical interactions to mailing[s]) because of the fact that she was restricted in her movement."  (*Id.*)

As to the evidence of Craft's interactions with other neighbors, the government contends that it shows that Craft had tense interactions with other, white neighbors in the past.  But in those instances, she did not later send those neighbors "racially charged threats."   (*Id.*) According to the government, this "is circumstantial evidence of [Craft's] motive and that she targeted the victim family because of their perceived race and supports a 3A1.1 enhancement." (*Id.* (referencing U.S.S.G. § 3A1.1))  Craft opposes the government's 404(b) notice, arguing that (1) the state-court evidence does not "create a modus operandi or a pattern with the charged acts due to their distinctive similarity" (D.N. 26, PageID.92 (citing *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010))); and (2) evidence of Craft's interactions with other neighbors does not

"meet [the definition of motive]."  (*Id.*, PageID.93 (citing *United States v. Corsmeier*, 617 F.3d 417, 420–21 (6th Cir. 2010)))

The Sixth Circuit has adopted a three-step test for courts deciding whether to admit evidence under Rule 404(b):

> First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred.  Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b).  Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

*United States v. Rios*, 830 F.3d 403, 426 (6th Cir. 2016) (quoting *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)).  There is no dispute about whether the prior acts occurred.  (*See* D.N. 23; D.N. 26)  Thus, only the second and third prongs of the test are at issue here.  *See Rios*, 830 F.3d at 426.

### 1.  Prong Two

To determine whether the proper-purpose prong is met, the Court asks whether "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered."  *United States v. Freeman*, 412 F. App'x 735, 744 (6th Cir. 2010) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

### a.  State-Court Proceedings

The government says it is offering the evidence of Craft's state-court proceedings and the issuance of a no-contact order to prove identity—an admissible purpose under Rule 404(b).  *See* Fed. R. Evid. 404(b)(2).  (D.N. 23, PageID.78)  And, under § 876(c), Craft's identity is both material and "in issue."  *See* § 876(c).  Where identity is material and in issue, "evidence 'that the defendant previously committed a different crime using the same or similar modus operandi

as was employed in the commission of the crime charged [is admissible] to show that the same actor committed both crimes.'" *United States v. Collard*, 849 F. App'x 523, 531 (6th Cir. 2021) (citation omitted); *see also Allen*, 619 F.3d at 524 ("Prior acts or crimes can be admitted to show identity, provided they are 'of sufficient distinctive similarity' with the charges in the indictment to 'create a pattern or modus operandi.'" (quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006))). Importantly, the prior crimes or prior acts need not "be identical in every detail" to the crimes charged in the indictment. *Perry*, 438 F.3d at 648. The government contends that the prior state court proceedings and the issuance of a no-contact order prove identity because they demonstrate "that Craft altered her methods of threatening the victim family (i.e.[,] physical interactions to mailing[s]) because of the fact that she was restricted in her movement." (D.N. 23, PageID.79) The Court finds that the evidence is probative of identity because, when viewed in combination with the crimes charged in this case, it involves similar circumstances and conduct—threatening communications directed at the victim family—and is therefore sufficient to "create a pattern or modus operandi." *Allen*, 619 F.3d at 524 (quoting *Perry*, 438 F.3d at 648); *see Collard*, 849 F. App'x at 531; *United States v. Mack*, 258 F.3d 548, 553–54 (6th Cir. 2001). Accordingly, this evidence satisfies the proper-purpose prong. *See Freeman*, 412 F. App'x at 744.

### b.  Interactions with Other Neighbors

The government contends it is offering the evidence of Craft's interactions with other neighbors to prove her motive—an admissible purpose under Rule 404(b). *See* Fed. R. Evid. 404(b)(2). (D.N. 23, PageID.79) But Craft's motive of racial animus is not material or "in issue" under the relevant statute. *See* § 876(c). Moreover, § 876(c) does not require the government to prove Craft's motive of racial animus beyond a reasonable doubt. *See id.* The

Court concludes that this evidence is too attenuated from the crimes charged in the indictment. The evidence of Craft's interactions with other neighbors therefore fails the proper-purpose prong and is not admissible under Rule 404(b).  *See Freeman*, 412 F. App'x at 744.

### 2.  **Prong Three (Rule 403)**

Finally, the Court must conduct a Rule 403 analysis, weighing the probative value of the evidence of Craft's state-court proceedings and the issuance of a no-contact order against the danger of unfair prejudice it presents.  *See Rios*, 830 F.3d at 426.  "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).  "Such improper grounds include 'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged.'"  *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997)).  Rule 403 requires courts to "look at the evidence in the 'light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'"  *Newsom*, 452 F.3d at 603 (quoting *Bonds*, 12 F.3d at 567).

In her sur-reply, Craft argues that the "proposed other acts evidence will put other allegations involving inflammatory language and racial bias squarely in front of the jury" and the "only logical value the other acts [offer] is the idea that someone who is accused of acting out of racial bias in one way also acted of out racial bias with respect to the charged offenses."  (D.N. 26, PageID.95)  Craft concludes that "[a]ccusations of this nature inspire a powerful negative response that will be impossible to set aside."  (*Id.*)  The Court disagrees.  The probative value of this evidence is high regarding the issue in this case: whether Craft is the individual who mailed

threatening communications to the victim family.  *See* § 876(c).  Simply put, the fact that the state court issued a no-contact order due to similar threatening conduct directed at the victim family arguably makes it more likely that Craft mailed the threatening communications charged in the indictment.  Such evidence would not "suggest [a] decision on an improper basis," *Newsom*, 452 F.3d at 603 (quoting *Bonds*, 12 F.3d at 567), and therefore "[t]he damage from 'the legitimate probative force' of this evidence is not enough for a finding of unfair prejudice." *United States v. Shanklin*, No. 3:16-CR-00085-TBR, 2017 WL 1424302, at *4 (W.D. Ky. Apr. 20, 2017).  Accordingly, the Court finds that the probative value of the state-court proceedings and the issuance of the no-contact order is not substantially outweighed by the dangers of prejudice to Craft.  The evidence is therefore admissible under Rule 404(b)(2) and the Court will include an appropriate limiting instruction to the jury at trial.  *See Rios*, 830 F.3d at 426.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The United States' request to introduce evidence of other acts (D.N. 21) is **GRANTED** with respect to the evidence categories numbered (4), (9), (10), (11), and (19).  The Court anticipates that it will admit the evidence category numbered (12) at trial but will consider further argument prior to so ruling.

14

(2)     The United States' notice of intent (D.N. 21) is **DENIED** as to the evidence

categories numbered (2) and (3).

March 1, 2023

**David J. Hale, Judge**
**United States District Court**

15